UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| MONA CRISTENE ACCETTA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 15-cv-01419-NJV<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 10, 19 |

**INTRODUCTION**

Plaintiff, Mona Cristene Accetta, seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. The decision thus is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 5 & 7). The court therefore may decide the parties' cross-motions for summary judgment. For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF RELEVANT EVIDENCE

### *Nurse Fenton*

On February 13, 2009, Nurse Fenton, Plaintiff's primary care person, diagnosed Plaintiff with depression. AR. 404. Fenton prescribed Wellbutrin. *Id*.

In January of 2010, Plaintiff was again diagnosed with depression and anxiety, for which Fenton prescribed Fluoxetine. AR. 400. The Fluoxetine prescription was refilled in June of 2010. AR. 397. In November of 2010, Plaintiff was again diagnosed with depression (along with headaches), for which Fenton increased Plaintiff's Fluoxetine dosage. AR. 394. On follow-up three weeks later, Plaintiff reported feeling "weird" on the increased Fluoxetine dosage. AR. 392.

In April of 2012, Plaintiff presented to Fenton with reports of severe agoraphobia, post-traumatic stress disorder, and depression in addition to insulin-dependent diabetes. AR. 512. Fenton continued Plaintiff on her current medications. AR. 512. In August of 2012, Fenton questioned the diagnosis of post-traumatic stress disorder. AR. 467.

On September 6, 2012, Fenton completed a Mental Capacities Form on behalf of Plaintiff. AR. 506. As to Plaintiff's mental capacity, Fenton found that Plaintiff suffers from depression and that, as a result, she has difficulty with maintaining and completing tasks; poor self-care; that

Case 1:15-cv-01419-NJV   Document 20   Filed 05/11/16   Page 3 of 11

her anhedonia and fatigue render her unable to communicate well with others in that she is irritable and apathetic at times; that she is unable to sustain focus and attention with poor motivation; and that she has poor adaptation to stress. AR. 506.

On November 6, 2012, Nurse Fenton diagnosed Plaintiff with anxiety, insomnia, and depression. AR. 502. On November 20, 2012, Plaintiff reported having panic attacks and that she wakes up crying. AR. 501. Fenton discontinued the Cymbalta and started Plaintiff on Sertraline. AR. 501.

### *Dr. Zipperle – State Agency Examining Psychologist*

On July 31, 2010, the state agency sent Ms. Accetta for examination and evaluation by psychologist Marion-Isabel Zipperle (AR. 305-08). Dr. Zipperle's diagnostic impressions were of polysubstance abuse/dependence in remission; major depressive disorder; post-traumatic stress disorder; panic disorder with agoraphobia; and a personality disorder. AR. 307. Dr. Zipperle's prognosis for Plaintiff was "poor" due to her "memory issues, her anxiety about leaving the house and being in crowds, her fatigue, uncomfortableness [sic] leaving her home, nervousness, and self-esteem issues, self-confidence issues, flashbacks, nightmares, intrusive thoughts, hypervigilance, mistrustfulness of others, believing that they are out to hurt her." AR. 308. Dr. Zipperle opined that Plaintiff would need special or additional instructions to work; that her psychiatric issues make it impossible to maintain attendance in the workplace; that she could not complete a workday or workweek without interruptions from her psychiatric issues; and that she could not deal with the stress encountered in the workplace. AR. 308.

### *Dr. Kalman – State Agency Examining Psychiatrist*

On March 5, 2012, Plaintiff underwent psychiatric examination and evaluation by Dr. Les Kalman, M.D., Psy.D.. AR. 423-27. Dr. Kalman reviewed the consultative examination report from Dr. Zipperle in preparing for the evaluation. AR. 423. Dr. Kalman's diagnostic impressions were of post-traumatic stress disorder, Major Depression, Panic Disorder with Agoraphobia, and Amphetamine Abuse in remission. AR. 426. He opined that Plaintiff was unable to relate and interact with supervisors and co-workers; unable to deal with the public; and that she has a decreased ability to maintain attention, concentration, and memory; with a decreased ability to

3

withstand the stress and pressures of daily work activities. AR. 426.

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*Id*. § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (*Id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. *See* AR. 22-37.

At Step One, the claimant bears the burden of showing She has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. AR. 24.

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered the following severe impairments: insulin-dependent diabetes, hepatitis C, hypothyroidism, beginning diabetic neuropathy of the feet, degenerative disc disease of the cervical spine, major depressive disorder, panic disorder, and post-traumatic stress disorder. AR. 25.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears

the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *Id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. AR. 25. Next, the ALJ determined that Plaintiff retained the RFC "to perform light work" with several physical and mental limitations, including the restriction that she "should have no interaction with the public." AR. 27.

At Step Four, the ALJ determined that Plaintiff was not capable of performing her past relevant work. AR. 35. At Step Five, after considering the Plaintiff's age education, work experience, and RFC, and after consulting with a VE, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id*. Accordingly, the ALJ found that Plaintiff had "not been under a disability, as defined in the Social Security Act," through the relevant time period. AR. 36.

**ISSUESS PRESENTED**

Plaintiff presents two issues for this court's review of the ALJ's decision: (1) whether the ALJ erred in rejecting the opinions of the state agency examining doctors and Fenton; and (2) whether the ALJ erred in rejecting Plaintiff's complaints of mental limitations. Pl.'s Mot. Doc. 10-1 at 10 & 18.

**DISCUSSION**

*The ALJ's Rejection of the Medical Opinion Evidence*

Plaintiff argues that the ALJ improperly rejected the mental health opinions of the state agency examining doctors and her treating source nurse Fenton. Defendant counters that the ALJ properly rejected the medical opinion evidence.

With regard to Plaintiff's mental health limitations, the ALJ considered the opinions of state agency examining doctors Zipperle and Kalman, treating source nurse Fenton, and non-examining psychologists Patterson and Jacobson. Examining doctors Zipperle and Kalman both opined that Plaintiff suffers work-preclusive mental limitations, while non-examining doctors

1   Patterson and Jacobson opined that Plaintiff was limited, but did not suffer work-preclusive
2   limitations.  The crux of the ALJ's finding at issue here was that while Plaintiff would be
3   precluded from working with the general public, she could work in and among co-workers.  Dr.
4   Zipperle opined that Plaintiff could not maintain work attendance based on her psychotic issues
5   and Dr. Kalman found that Plaintiff could not work with co-workers.  The non-examining doctors
6   found that Plaintiff would be markedly limited in working with the public, but only moderately
7   limited in working with co-workers.  The ALJ relied on the non-examining physicians to reject the
8   examining physicians' reports regarding working with co-workers, but then rejected the non-
9   examining doctors' opinions regarding plaintiff's ability to work with the public.  The court finds
10  that the ALJ's determination lacks the support of substantial evidence.

11          "If a treating or examining doctor's opinion is contradicted by another doctor's opinion,
12  an ALJ may only reject it by providing specific and legitimate reasons that are supported by
13  substantial evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester v.
14  Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).  Dr. Zipperle found that Plaintiff's "psychiatric issues
15  make it impossible to maintain attendance in the workplace."  AR. 308.  The ALJ rejected this
16  opinion because "Dr. Zipperle reviewed no actual medical evidence in rendering her assessments"
17  . . . , primarily relied on Plaintiff's allegations rather than the examination findings, made
18  conclusions that were inconsistent with the examination, and because the opinion was inconsistent
19  with the record as a whole.  AR. 33.  Plaintiff argues that the ALJ's reasons are not supported by
20  substantial evidence.

21          Although Dr. Zipperle may not have reviewed medical records in formulating her opinion,
22  she did perform a "comprehensive psychiatric evaluation," including a mental status examination,
23  which included her own diagnostic impressions and observations.  The Commissioner argues that
24  the ALJ properly rejected Plaintiff's subjective complaints, so therefore, Dr. Zipperle's opinion
25  based on those complaints were invalid.  "However, "[a]n ALJ does not provide valid reasons for
26  rejecting an examining physician's opinion 'by questioning the credibility of the patient's
27  complaints where the doctor does not discredit those complaints and supports [her] ultimate
28  opinion with [her] own observations.'"  *Dale v. Colvin*, No. C14-1936-BJR-BAT, 2015 WL

6

5254221, at *1 (W.D. Wash. Aug. 19, 2015) report and recommendation adopted, No. 2:14-CV-01936-BJR, 2015 WL 5285774 (W.D. Wash. Sept. 9, 2015) (quoting *Ryan v. Comm'r, Soc. Sec. Admin.*, 528 F.3d 1194, 1199–1200 (9th Cir. 2008)). Here the ALJ rejected Plaintiff's allegations that she lacked the concentration necessary to perform unskilled work, AR. 29, and Dr. Zipperle opined that Plaintiff could perform simple and repetitive tasks. AR. 308. Where Dr. Zipperle found work-preclusive limitations it was based on her opinion that Plaintiff's "psychiatric issues make it impossible to maintain attendance in the workplace and she could not complete a workday or work week without interruptions from her psychiatric issues. She could not deal with the stress encountered in the workplace." *Id*. The ALJ found Plaintiff's complaints of anxiety and depression to be credible. AR. 32. Thus, the ALJ failed to provide valid reasons for the rejection of Dr. Zipperle's opinion simply because it was based in part on Plaintiff's complaints. In addition, the ALJ did not address Dr. Zipperle's opinion regarding Plaintiff's attendance issues related to psychiatric interruptions.

The Commissioner argues that the ALJ also properly rejected Dr. Zipperle's opinion because it was inconsistent with the examination findings, pointing the court to Dr. Zipperle's observations that Plaintiff exhibited good hygiene and grooming, cooperative behavior, a coherent and logical thought process, full orientation and intact judgment. *See* AR. 33. However, those observations are not inconsistent with the doctor's findings regarding Plaintiff's anxiety, findings that the ALJ accepted. Even were these statements inconsistent, "the ALJ must not only identify the conflicting information, but provide her interpretation thereof." *Long v. Colvin*, No. 13-CV-05716-SI, 2015 WL 971198, at *6 (N.D. Cal. Mar. 3, 2015).

Further, "[w]hile the ALJ stated that Dr. [Zipperle's] opinion is inconsistent with the record as a whole [], the ALJ failed to identify specifically what evidence in the record conflicted with Dr. [Zipperle's] opinion and failed to provide an interpretation of the conflicting evidence, which is not enough to reject the opinion of an examining physician." *Murillo v. Colvin*, No. 15-CV-01325-JSC, 2016 WL 777793, at *14 (N.D. Cal. Feb. 29, 2016) (citing *Lester*, 81 F.3d at 830-31). "Moreover, Dr. [Zipperle's] opinion appears to have at least some support in the record, inasmuch as it overlaps significantly with the opinion of the other examining physician, Dr.

7

[Kalman]." *Id.*[1]

After a review of the medical evidence and a complete psychiatric evaluation, Dr. Kalman opined that Plaintiff "would not be able to relate and interact with supervisors and co-workers." AR. 426.  Dr. Kalman also opined that Plaintiff suffered a "decreased ability to maintain attention, concentration and memory" and a "decreased ability to withstand the stress and pressures associated with daily work activities." *Id.*  The ALJ rejected Dr. Kalman's opinion because he did not "provide reasons to support his determination" and his use of the "word [sic] 'decreased ability' . . . without qualification diminishes the probative value of his opinion." AR. 33.  With regard to the ALJ's assertion that Dr. Kalman failed to provide reasons for his opinion, the court finds this to be error.  Dr. Kalman's report provides the basis and reasoning for his findings, including his review of medical records and his examination of Plaintiff.  It is the nature of a psychiatric report for the reasons for the opinion to be within the report.  As to the ALJ's dismissal of the opinion because of the use of the undefined term "decreased ability," that undefined term only related to the ability to maintain attention, concentration, and memory and to withstand the stress and pressures associated with daily work activities.  It did not apply to Plaintiff's ability to relate and interact with supervisors and co-workers.  Thus, the ALJ erred in that she failed to provide any reason for the rejection of Dr. Kalman's opinion that Plaintiff "would not be able to relate and interact with supervisors and co-workers."

As to Fenton's opinion, the ALJ rejected it because it was inconsistent with the treatment plan involving "infrequent" changes in medication, the treatment notes, and with the bulk of medical evidence.  As will be discussed below, the ALJ's reasons which were based on "infrequent" changes in medication are insufficient, as the ALJ failed to specify why four changes in psychotropic medications in three years is "infrequent."  As to the inconsistency with the bulk of medical evidence, as discussed above, the ALJ improperly rejected the medical expert opinion in this case and thus, this basis fails as well.

---

[1] It also coincides with nurse Fenton's observations and at least in part with the opinions of the non-examining psychologists, who both determined that Plaintiff is markedly limited in her ability to interact with the public and moderately limited in her ability to get along and work with co-workers.  *See* AR. 95.

Moreover, the ALJ's decision reads in part as follows:

> "On September 6, 2012, Ms. Fenton concluded that the claimant work experience work-preclusion mental limitations (Exh. 13F/15), and Ms. Fenton issued a second opinion on September 6, 2012, simply indicating that the claimant could not work (Exh. 13F/12)."

AR. 33. The court is unable to parse this sentence's meaning and because the ALJ both adopted and rejected several portions of Fenton's opinion overall, the court is unable to even guess as to what portions of Fenton's opinion of Plaintiff's mental limitations the ALJ was specifically rejecting here.

### *The ALJ's Credibility Determination*

In performing the two-step analysis in assessing the credibility of Plaintiff's subjective testimony of her mental impairments, the ALJ determined that: at step one, Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged; and at step two, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms are not credible. AR. 27. The ALJ made this determination by: (1) asserting that the course of treatment Plaintiff received from Fenton did not substantiate allegations of disabling symptoms, *id*.; and (2) by pointing to the psychological examiners' reports, AR. 28. Based on these factors, the ALJ concluded that Plaintiff's "mental impairments and associated symptoms are inconsistent with the balance of the medical record." AR. 29.

As to the psychological examiner's reports, the ALJ admitted Plaintiff's abnormal affect, but pointed to her cooperative behavior, normal speech, good grooming, and no signs of psychosis or suicidal ideation. *Id*. These reasons ignore the examiners' determinations that Plaintiff would be precluded from interacting with the public and co-workers. Perhaps the ALJ omitted those portions of the doctors' opinions because she later rejects them. In any event, as discussed above, those rejections were improper and thus, as to the psychological examiners' reports, the ALJ has not provided "convincing" reasons for rejecting Plaintiff's subjective complaints. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) ("[T]he ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so.").

As to Plaintiff's course of treatment with Fenton, here the ALJ has failed to provide specific, clear, or convincing reasons for rejecting Plaintiff's complaints. The ALJ merely makes the statement that the course of treatment did not substantiate the allegations, then goes on to describe the course of treatment. Plaintiff accurately summarizes her course of treatment with Fenton as follows:

> Starting in February of 2009, her first recorded psychiatric treatment, Plaintiff was started on Wellbutrin (AR 404), which was changed to Fluoxetine in January of 2010 due to the development of anxiety (AR 400). The Fluoxetine was continued in June of 2010 (AR 397) before the dosage was increased in November of 2010 (AR 394), but as of the end of that month, that increased dosage began causing side effects (making her feel "weird") (AR 392). In April of 2012, nurse Fenton continued the Cymbalta that she had already been taking (AR 502), but by November of 2012, she reported panic attacks and that she was waking up crying, so the Cymbalta was discontinued in favor of Sertraline (AR 501).

Pl.'s Mot. (Doc. 10-1) at 16. After describing the course of treatment, the ALJ points to Fenton's decision "to continue to refill [Plaintiff's] psychotropic medications without change" from 2010 to 2012, without explaining why these two years of treatment with psychotropic medication itself is insufficient to support Plaintiff's allegations of mental limitations. The ALJ recites four changes of medication between February of 2009 and November of 2012 under Fenton but fails to articulate why that course of treatment is "infrequent" or deficient to support Plaintiff's allegations. Thus, the ALJ failed in her obligation to provide "specific, clear and convincing reasons" in support of her adverse credibility determinations. *White v. Colvin*, No. C-14-5584 EMC, 2015 WL 4734915, at *8 (N.D. Cal. Aug. 10, 2015).

## CREDIT AS TRUE

Having determined that the ALJ committed legal error, the court must consider whether to remand the case back to the ALJ to correct the error, or to follow Plaintiff's request that this court apply the "credit-as-true" rule and remand this case to the ALJ for the calculation of benefits. In order to apply the credit-as-true rule,

> "[t]he district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between [the claimant's] testimony and the medical evidence in the record, or whether the government has pointed to

10

> evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."

*Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015), as amended (Feb. 5, 2016) (internal citations omitted). Here the record contains ambiguities, in that the ALJ failed to provide specific, clear and convincing reasons for rejecting Plaintiff's allegations and the ALJ failed to articulate proper reasons for rejecting the medical opinion evidence. In addition, there are inconsistencies in the medical record of evidence, between both the examining physicians and the non-examining physicians. Accordingly, the court cannot apply the "credit-as-true" rule. *See Id.* at 409-410.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's motion for summary judgment. The court hereby REMANDS this matter for further proceedings in accordance with this Order.

A separate judgment will issue.

**IT IS SO ORDERED**.

Dated: May 11, 2016

_____
NANDOR J. VADAS
United States Magistrate Judge